IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY ROEBER,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>HILTON WORLDWIDE HOLDINGS, a Delaware Corporation d/b/a HAMPTON INN; 4TH GENERATION DEVELOPMENT INC., a Nebraska Corporation; KEENAN MANAGEMENT, LLC, a Nebraska Limited Liability Company; and RICHARD SIMMONS, an individual,<br><br>　　　　　　　　　　Defendants. | Case No.: 1:25-cv-04908 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S MOTION TO DISMISS**
<u>**FOR LACK OF PERSONAL JURISDICTION**</u>

**NOW COMES** the Plaintiff, GARY ROEBER ("Plaintiff"), by and through his counsel, GALLAGHER LAW OFFICES, LLC, and for his response to Defendant Hilton Worldwide Holdings Inc.'s ("Hilton") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), states and alleges as follows:

<u>**INTRODUCTION**</u>

　　Hilton Worldwide Holdings Inc. ("Hilton") wants this Court to believe it has no real ties to Illinois and no meaningful connection to the Nebraska hotel where Plaintiff was injured. But Hilton's own conduct tells a very different story. Every day, Hilton targets Illinois residents through the Hilton Honors program, nationwide marketing campaigns, and an interactive reservation system specifically designed to draw Illinois travelers into its network of Hilton-branded hotels. Plaintiff Gary Roeber is exactly the kind of consumer Hilton cultivated: an Illinois resident who, using Hilton's app and Honors account, booked a stay at the Hampton Inn & Suites in North Platte, Nebraska, where he was later injured.

Nor is Hilton a distant, hands-off licensor. As alleged in the Second Amended Complaint, Hilton embeds itself in the very bricks and mortar of its branded hotels. It provides franchisees a team of "accomplished professionals" to advise on architecture, interior design, and construction; requires use of its "Project HUB" platform to submit plans and specifications for Hilton's review and approval; designates or recommends suppliers through "Supplier Connection"; and enforces detailed design, construction, renovation, and safety standards through inspections and quality-assurance programs. (Dkt. #38, ¶¶ 14-21, 28-30). Those standards extend to the hotel entrance and the precise area where Plaintiff fell. (*Id*. at ¶ 21). In other words, Hilton not only solicited Plaintiff's business in Illinois, it also dictated the design and configuration of the premises that caused his injury.

Hilton cannot aggressively cultivate Illinois customers, control the look and feel of the hotels that serve them, profit from every stay, and then wash its hands of jurisdiction when something goes wrong. Because Hilton purposefully directed its business toward Illinois and exercised pervasive control over the Hilton-branded property at issue, its Rule 12(b)(2) motion should be denied.

## **LEGAL STANDARD**

When a case comes before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois state court would have jurisdiction. *See RAR Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). Under the Illinois long-arm statute, a court may exercise jurisdiction over nonresident defendants for a cause of action arising from acts such as transacting any business within the state, committing a tortious act within the state, or making or performing any contract or promise substantially connected with the

state. 735 ILCS 5/2-209(a). Furthermore, the statute provides that a court may exercise jurisdiction on any basis permitted by either the Illinois or federal constitutions. 735 ILCS 5/2-209(c). To determine the reach of Illinois due process, courts look to Federal Due Process limits on jurisdiction. *RAR*, 107 F.3d at 1276–1277.

Personal jurisdiction can be either general or specific. General jurisdiction arises when a defendant's activities are continuous and systematic, to the extent that it is proper for a court to exercise jurisdiction over the party for any action it takes. *See Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408 (1984). Specific jurisdiction, by contrast, can be exercised when a suit arises out of or is related to the defendant's contacts with the forum. *Id*. at 414 n.8.; *FAIP North America, Inc. v. Sistema S.R.L.*, No. 05 C 4002, 2005 U.S. Dist. LEXIS 32798, at *7–8 (N.D. Ill. Dec. 14, 2005).

To establish specific jurisdiction, the party must have purposefully directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In addition, the lawsuit at issue must "arise out of or relate to" the party's contacts with the forum. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (quoting *Burger King*, 471 U.S. at 472–73); *see also Fairly Odd Treasures, LLC v. P'ship & Unincorporated Ass'ns Identified in Schedule "A"*, No. 21 C 6136, 2024 U.S. Dist. LEXIS 68557, at *4 (N.D. Ill. Apr. 16, 2024) ("As a threshold matter, Fulton has sufficient minimum contacts with Illinois. Its creation of an interactive website and the selling and shipping of a product to Illinois through a third-party site suffice under controlling Seventh Circuit authority. (citation omitted). Fulton purposefully directed its activities toward Illinois residents by allowing them to purchase its products for its financial benefit.").

When deciding a Rule 12(b)(2) motion, the court will "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). The plaintiff need not include facts alleging personal jurisdiction in the complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

"The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Id*. If the district court rules on a defendant's motion to dismiss "without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." *uBID*, 623 F.3d at 423.

When affidavits regarding the issue of personal jurisdiction are submitted, the district court may weigh the affidavits. However, "[i]n evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research*, 338 F.3d at 782 (quoting N*elson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). Thus, this court will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record, either by way of the Plaintiff's complaint or other submissions. Where there is a factual conflict between the record and Hilton's affidavits, they must be resolved in the Plaintiff's favor. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020).

## **ARGUMENT**

I. **Specific jurisdiction over Hilton exists.**

    A. **Hilton purposefully directed its business toward Illinois.**

Hilton's conduct goes well beyond maintaining a generic website or the kind of incidental contact rejected in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014). In *Advanced Tactical*, the Seventh Circuit made clear that merely having an "interactive website" or sending non-targeted email "blast" announcements does not amount to purposeful availment because such communications are fortuitous and not directed at any particular forum. *Id*. at 803–04. The defendant there had only "fulfilled a few orders" and sent general emails accessible nationwide, which the court held was insufficient since "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 802, citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)

Hilton's conduct is categorically different. Unlike the passive email list in *Advanced Tactical*, Hilton has deliberately cultivated the Illinois market. Its website prominently promotes Illinois hotels, tailors marketing to Illinois consumers through geolocated digital advertising, and channels Illinois residents into its Hilton Honors loyalty program. These actions are exactly the sort of forum-targeted conduct the Seventh Circuit in *Advanced Tactical* said would satisfy due process – "deliberate actions by the defendant to target or direct itself toward the forum state." *Advanced Tactical*, 751 F.3d at 803.

The Seventh Circuit's decision in *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), squarely supports jurisdiction under these facts. There, the defendant operated a website selling cigarettes directly to Illinois consumers. Hemi maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts. *Hemi*, 622 F.3d at 757-58. The court held that *Hemi* had purposefully availed itself of the Illinois market because it "stood ready and willing to do business with Illinois residents." *Id*. at 758. The court emphasized that online commerce directed at Illinois residents

constitutes purposeful availment where "Hemi set up an expansive, sophisticated commercial venture online." *Hemi*, 622 F.3d at 760. Hemi "held itself out to conduct business nationwide and was apparently successful in reaching customers across the country." *Id*. Hemi "was savvy enough to at least try to limit its exposure to lawsuits in states in which it felt that the upside of doing business was outweighed by the risk of litigation." *Id*. Just as Hilton tries to do in this case, Hemi wanted to "have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." *Id*. Ultimately, the Court held that "There is nothing constitutionally unfair about allowing Illinois, a state with which Hemi has had sufficient minimum contacts, to exercise personal jurisdiction over Hemi." *Id*. The same result should carry the day in this case.

The Seventh Circuit reaffirmed and extended *Hemi*'s reasoning in *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020). There, the court upheld jurisdiction where a Nevada company operated an interactive website that sold directly to Illinois consumers, explaining that due process was satisfied because the defendant reached out to customers in Illinois and made sales there. Id. at 399 ("Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the 'ship-to' options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address. Revolution admittedly sold its Diesel Test product to 767 Illinois residents between October 14, 2016, and June 1, 2017. Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful."). The court rejected the idea that physical presence was necessary, holding that commercial transactions conducted over the Internet can establish personal jurisdiction when the defendant has purposely directed activities

at the forum's market. *Id*. at 398. Hilton's business model – online bookings by Illinois consumers through its interactive platform – mirrors those facts. Just as the *Curry* defendant sold and shipped products to Illinois residents for profit, Hilton sells and facilitates hotel stays for Illinois residents and profits from those transactions.

Moreover, Hilton's Illinois-directed conduct is more substantial than the *Curry* defendant's website sales. Hilton maintains a pervasive network of physical hotels, franchisees, and employees in Illinois, integrates those properties into its global reservation system, and ties Illinois residents to its brand through the Hilton Honors loyalty program. This consistent and deliberate effort to serve Illinois travelers goes well beyond the few isolated sales and company-related email list deemed insufficient in *Advanced Tactical*, 751 F.3d at 802–03, and places Hilton squarely within the category of defendants who have "purposefully directed" their activities at the Illinois market for sustained commercial benefit under *Hemi* and *Curry*.

  **B. Hilton's Illinois-directed booking and carefully curated national design caused Plaintiff's injury.**

Plaintiff, an Illinois resident, used Hilton's Illinois-facing reservation system to book the Nebraska hotel where he was injured. (Dkt. #38, ¶ 32). The reservation was made using Hilton's platforms that had been marketed to Plaintiff in Illinois, including the Hilton Honors program and mobile app. (*Id*. at ¶¶ 22–27, 32). Once Plaintiff elected to stay at a Hilton-branded property, Hilton's design, construction, and renovation standards dictated the physical environment he encountered. As alleged in the Second Amended Complaint, Hilton supplied franchisees a team of design professionals, required use of its "Project HUB" platform to submit plans and specifications for Hilton's review and approval, directed "Supplier Connection" for key materials and equipment, and mandated compliance with Hilton's detailed design and renovation guidelines – guidelines that specifically governed the hotel entrance and the area where Plaintiff fell. (*Id*. at ¶¶ 14–21, 28–

30). Thus, the same Illinois-directed system that induced Plaintiff to book this stay also produced the allegedly dangerous design features that caused his injury.

In *Curry*, the Seventh Circuit held that a claim arises out of or relates to the defendant's forum contacts when the defendant's Illinois-directed online activities caused or related to the events giving rise to the suit and that Illinois "has a strong interest" in providing a forum for its residents to seek redress for harms suffered by an out-of-state act. *Curry*, 949 F.3d at 402.

The same is true here, and more. Hilton's Illinois-directed marketing and booking system induced Plaintiff to stay at the Hampton Inn & Suites in North Platte, Nebraska; its design and construction control then ensured that the entrance area where Plaintiff fell would conform to Hilton's standards. But for Hilton's Illinois-directed solicitation and reservation system, Plaintiff would not have been at this property; and but for Hilton's carefully curated and nationally imposed design and construction requirements, the entrance configuration and conditions that caused his fall would not have existed. Plaintiff's claims therefore arise directly out of Hilton's Illinois contacts both on the transactional (booking) side and on the physical (design and build) side.

### C. Hilton's design, construction, and renovation control reinforces that personal jurisdiction exists in Illinois.

Hilton is not a passive trademark licensor either. As the Second Amended Complaint details, Hilton embeds itself in the design, construction, renovation, and operation of its branded hotels. Hilton provides franchisees "a team of accomplished professionals whose expertise and guidance can be expected on all aspects of architecture, interior design and construction during the entire property development process." (Dkt. #38, ¶ 14). Hilton represents that its "team of renowned designers, with decades of experience, provide tailored advisory services to hotel ownership, operators, and design consultants to optimize the hotel's performance and the quality of the guest experience throughout the entire design process." (*Id*. at ¶ 15). It "supports"

franchisees' design, construction, and renovation efforts (*id*. at ¶ 16), assigns "project managers," and requires use of its "Project HUB" platform so that drawings and specifications are submitted to Hilton for review and approval. (*Id*. at ¶ 17).

Hilton further directs "Supplier Connection," recommending or designating particular suppliers for key materials and equipment. (*Id*. at ¶¶ 18–19). It mandates adherence to its own design, construction, and renovation guidelines to create a uniform look and guest experience across the brand and enforces those standards through inspections and quality-assurance programs. (*Id*. at ¶¶ 20, 28–30). Critically, those Hilton standards cover the hotel entrance and the exact area where Plaintiff fell. (*Id*. at ¶ 21).

These facts describe far more than arm's-length franchising; they show that Hilton dictated the look, layout, and materials of the very area that caused Plaintiff's injuries. As the Seventh Circuit has emphasized, specific jurisdiction exists where a nonresident defendant deliberately creates "continuing obligations" with forum residents and thereby invokes the benefits and protections of the forum's laws. *Purdue Research*, 338 F.3d at 780-81, 787. Here, Hilton's nationwide design and brand-control scheme is the mechanism by which it continuously engages Illinois residents and ensures that a Hilton-branded property in Nebraska offers the same Hilton-controlled experience it marketed in Illinois.

Hilton's supporting declaration from James O. Smith does not meaningfully rebut these allegations. The Smith declaration focuses on corporate formalities and ownership but says nothing about Hilton's design guidelines, Project HUB, Supplier Connection, or the entrance-area standards pled in ¶¶ 14–21 and 28–30 of the SAC. On a Rule 12(b)(2) motion, where a defendant's affidavit ignores specific, well-pleaded jurisdictional facts, the court resolves the conflict in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782; *Curry*, 949 F.3d at 392–93. At this stage,

Hilton's silence on its design and construction control only reinforces Plaintiff's *prima facie* showing that Hilton purposefully availed itself of doing business in Illinois through a tightly controlled franchise system that produced the very hazard at issue here.

> **D. Hilton's franchisees and managers act as its agent or apparent agent for jurisdictional purposes.**

The design and operational control described above is not just relevant to Hilton's minimum contacts; it also confirms that Hilton's franchisees and managers act as its agents or apparent agents for jurisdictional purposes. Illinois courts have long held that a nonresident defendant may be subject to personal jurisdiction based on the in-state acts of its agent. *See*, *e.g.*, *Allerion, Inc. v. Nueva Icacos, S.A. de C.V.*, 283 Ill. App. 3d 40, 48 (1st Dist. 1996); *Damian Servs. Corp. v. PLC Servs., Inc.*, 763 F. Supp. 369, 372 (N.D. Ill. 1991).

By contrast, courts are more cautious about imputing the acts of truly independent contractors. In *Madison Miracle Prods., LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶¶ 83–84, the court declined to attribute the conduct of third-party distributors to the nonresident defendant where the agreements and course of dealing showed no agency relationship and contemplated that the third parties would act independently.

One of the key elements in determining whether an agency relationship exists is the right of control. *See Cooper v. slat Luther King Jr. Boys & Girls Club of Chi.*, 2021 IL App (1st) 192618, ¶ 52 (explaining that in the context of agency liability, having the right to control the work is enough, even if that individual does not, in fact, exercise that control).

Here, the SAC pleads exactly the sort of right-of-control that evidences such an agency or apparent agency relationship: Hilton dictates hotel design, approves or vetoes plans through Project HUB, steers franchisees to designated suppliers, writes the standards for construction and renovation, and requires Hilton's "prior written consent before retaining or engaging any architect,

interior designer, general contractor and major subcontractors for the Hotel.". (Dkt. #38, ¶¶ 14–21, 28–30). Hilton then enforces those standards through inspections, audits, and quality assurance programs and requires franchisees to "take all steps necessary to correct any deficiencies within the times we establish." (*Id.* at ¶30-31). Finally, Hilton required the franchisees to pay it a monthly "program fee" in order for the former to provide the latter "advertising, promotion, publicity, public relations, market research, marketing programs, websites, and reservation service systems" that target Illinois residents like the Plaintiff. (*Id.* at ¶29). Those allegations show franchisees and managers are not free-floating independent contractors; they are the means by which Hilton carries out its own business model and brand promises in Illinois and nationwide.

In *Santora v, Starwood Hotel & Resorts Worldwide, Inc.*, the court denied the defendant hotel's motion for summary judgement finding sufficient evidence to establish that the hotel was an agent for the hotel chain under the theory of "apparent authority". 580 F.Supp.2d 673, 676 (N.D. Ill. July 16, 2008). The court began acknowledging that "Illinois has long recognized the doctrine of apparent authority, which refers to a type of agency relationship.

> A principal will be bound by not only that authority which he actually gives to another, but also by the authority that he appears to give. Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. Where the principal creates the appearance of authority, the principal will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent." 580 F.Supp.2d at 675-76; quoting *Gilbert v. Sycamore Mun. Hosp.,* 156 Ill.2d 511, 523, 190 Ill.Dec. 758, 622 N.E.2d 788 (Ill.1993)

The court found that in order to demonstrate that an agency relationship existed between the hotel and Starwood, the plaintiff was required to first show that Starwood or the hotel "acted in a manner that would lead a reasonable person to conclude that the hotel was an agent of Starwood." *Id.* at 676; citing *Gilbert*, 156 Ill.2d at 525. "Where the acts of the hotel create the

appearance of authority, plaintiff must also prove that Starwood had knowledge of and acquiesced in them." *Id.* Finally, plaintiff must show that he acted in reliance upon the conduct of the Starwood or the hotel, consistent with ordinary care and prudence. *Id.* The court concluded by confirming that "whether an agent is authorized to act" and "whether a person has notice of the lack of an agent's authority or is put on notice by circumstances" are "a question of fact." *Id.* at 676.

The court held that plaintiff provided sufficient evidence to establish apparent authority or agency through the following:1) Starwood preferred guest card mailed to the plaintiff listed the hotel as part of the "Starwood Family"; 2) exhibits demonstrated that the hotel was part of Starwood's collection of hotels; 3) the hotel reservation sent to plaintiff identified the hotel as part of the Starwood collection and identified plaintiff's "Starwood Preferred Guest Number"; 4) and the Starwood webpage listed the hotel as one of its hotels. *Id.* at 676.

In the present case, Plaintiff has established many of the above factors with objective evidence *without the benefit of any* discovery. Plaintiff alleges that he interacted directly with Hilton's own Illinois-facing platforms, booked through Hilton's centralized reservation system, transacted via his Hilton Honors account, and stayed at a hotel outfitted, signed, and marketed as a Hilton-standard property designed and operated to Hilton's specifications. (Dkt. #38, ¶¶ 8, 14–21, 22–32). Here, Those allegations support the inference that Hilton represented the hotel as part of a uniform Hilton system subject to Hilton's control, that Plaintiff relied on those representations and Hilton's brand when choosing and booking the hotel, and that he suffered injury in reliance on Hilton's apparent control – precisely the elements of apparent agency identified in *Santora*.

### E. Exercising jurisdiction over Hilton in Illinois does not offend traditional notions of fair play and substantial justice.

Because Hilton's Illinois contacts are purposeful, the fairness factors easily favor jurisdiction. The Supreme Court directs courts to weigh the burden on the defendant, the forum

State's interest, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Burger King*, 471 U.S. at 477. Hilton derives significant revenue from Illinois, operates numerous properties here, and frequently litigates in this District. Illinois has a compelling interest in protecting its residents, and Plaintiff has an obvious interest in litigating near his home and treatment providers. Nothing about this forum offends traditional notions of "fair play and substantial justice."

II. **Hilton's massive and continuous presence in Illinois supports general jurisdiction.**

General jurisdiction applies where a corporation's forum activities are "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). While the standard is exacting, the Court has acknowledged that a corporation's operations may be "so substantial and of such a nature as to justify suit …on causes of action arising from dealings entirely distinct from those activities." *Id*. at 138, quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).

Hilton's footprint in Illinois meets that description. Its own website promotes more than 170 Hilton-branded properties across the state. It operates through wholly owned subsidiaries and franchisees that employ thousands of Illinois workers, pay Illinois taxes, and earn hundreds of millions in annual revenue from Illinois customers. The Hilton Honors program, administered directly by Hilton, counts tens of thousands of Illinois members who earn and redeem points here daily. These facts depict an enduring, institutional presence woven into Illinois's economy.

The Seventh Circuit has recognized that, although a corporation is ordinarily "at home" where incorporated or headquartered, exceptional circumstances exist when the corporation has "affiliations so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG*, 134

S. Ct. at 758 n. 11 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Hilton's pervasive Illinois operations – its reservation systems, extensive workforce, and branded hotels throughout the state – approximate precisely that kind of domestic presence.

## CONCLUSION

Hilton purposefully directed its business toward Illinois residents, exercised pervasive control over the Hilton-branded property at issue, and reaped substantial benefits from those relationships. Plaintiff's claims arise directly from that conduct. Because the exercise of jurisdiction comports with due process and fairness, Hilton's Rule 12(b)(2) motion should be denied.

**WHEREFORE**, the Plaintiff, GARY ROEBER, respectfully requests that the Court deny Hilton's Rule 12(b)(2) motion and grant such other and further relief as this Court deems just and proper.

                                          Respectfully submitted,

                                          GARY ROEBER

By:   */s/ Michael L. Gallagher*
       Michael L. Gallagher
       One of Plaintiff's Attorneys

Michael L. Gallagher
Gallagher Law Offices, LLC
Attorneys for Plaintiff
161 North Clark Street, Suite 3050
Chicago, Illinois 60601
ARDC: 6313961
*mlg@gallagherinjurylaw.com*